Good morning. May it please the Court. John Quinn, CJA, appointed counsel for Mr. Giovinco. Your Honor, I think it's important that we talk about what is really going on in this case. I'm going to point to two passages in the record. Can you put the two microphones down here? Can you hear me now? Yes. Let me start again. Thank you. Your Honor, good morning. John Quinn, CJA, counsel for Mr. Giovinco. I think it's critical that we talk about what is really going on in this case. It's troubling. I'm going to point to two passages in the record that I'm going to call smoking guns. In its initial rejection of my client's administrative appeal, the Bureau of Prisons wrote, an inmate cannot earn Federal time credits if he or she is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. April 22nd, this is page 826, if you have the appendix handy. Two pages later, three months later, a few months later, I'm sorry, this 824 is the first one, excuse me. An inmate cannot earn Federal time credits if he is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. That is absolutely not what the statute says. We have the BOP surreptitiously trying to amend the statute by adding a phrase that is simply not in it. And this is independent of what is serving a sentence for means. They said it can be is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. They say that on 824, the initial rejection, two pages later, 826. Finally, in the government's opposition below. And then on 828, which I guess is the final, is the denial of the appeal, which is what we're reviewing here. It says an eligible prisoner means the prisoner is not currently serving a sentence for a conviction that is on the list of ineligible offenses listed in the FSA in 18 U.S.C. 3632d4d. So even if at earlier stages of the proceeding they had what you're suggesting is erroneous, the prior conviction, the ultimate determination was just based on currently serving. Your Honor, the reason I'm pointing to that is that in the government's brief in the district court, the government took that exact position. Document 7, page 4, it's in the record, although not in the appendix. Crucial to the issue presented in this petition is the subsection of the FSA that categorically delineates which inmates are never eligible to earn FSA credits. Finally, in the government's brief to this Court, page 25, it makes the assertion on page 25 in response to my attack on the consistency or inconsistency of the BOP's position, they say the BOP has been consistent throughout. And what I'm arguing to you is that this is critical because everything the BOP is advancing is in service of this essentially indefensible amending of the statute. I think it's clear. It's kind of atmospheric. You're saying the BOP wants to be able to penalize somebody for a prior conviction even if they're not currently serving the sentence. And they tried to do that initially, and they came to the interpretation of currently serving a sentence that would include something previously. And you're saying that's another reason for thinking that their interpretation is opportunistic. But doesn't the case still depend on whether that interpretation is correct or incorrect? What I'm saying is that the arguments, that is the effective interpretation, that is how the BOP is asking this Court to read this statute. By aggregating the sentences, they are eliminating, they are overriding the carefully delineated list of crimes in Section 32 in the ineligibility provision. For their own administrative purposes? Well, so that's sort of the issue in this case. Administrative. Why is the administrative coming first? Okay? If we look at the statute, it's — Because the statutory framework says that it's — Your Honor, most respectfully, a different statute that is getting much more clout and respect by the body of case law out there says the BOP shall aggregate sentences for administrative purposes. Okay? My argument is if you look at — the mandate here is not the aggregation statute. The mandate is the crystal clear language in the ineligibility provision. Congress legislates against a legal backdrop, right? Of course. And so it's more well established that the BOP aggregates sentences whenever it administers a statute. Correct. Then if the Congress subsequently passes a statute that talks about is currently serving a sentence, then we would understand that in light of the principle of aggregation. Well — Right? Wouldn't we? So you need an argument to say that we don't have that background principle here. I take it your argument is the following. Is this right? If the statute gave discretion to the BOP to determine eligibility, then it would be an administrative purpose to determine eligibility, and so therefore the aggregation statute would apply. But because the statute here dictates eligibility, aggregation provision does not apply. Is that right? That that's your argument? Almost. What I'm saying is a couple of things. The — this statute, because it is written in the present tense and it speaks of crime-specific sentences, right there is the mandate that for this sentencing benefit, this particular credit, look at the records crime by crime, treat them separately, okay? I'm going to jump ahead. I think the courts — this Court has a — I guess that's what I'm saying. So you're — So what I'm saying is the result, if they have to rewrite what the statute means in order — But the point is that they're not rewriting what the statute means. Of course they are. What they're saying is because of the background principle of 18 U.S.C. 3584, which says that multiple terms of imprisonment shall be treated as one aggregated whole, the meaning of his serving a sentence in 3632 is different. It's no longer for individual conviction. It's an aggregated whole. So I guess — I guess maybe you need to have an explanation for what 3584 is doing that doesn't reach, you know, that — that conclusion. To advance — to help answer this question, I'm going to jump ahead to this Court's decision in the Martin case, which interestingly has been cited by both courts, by both parties here. Judge Livingston, I believe you might have been on — I think you were on the majority panel in that case. Okay. That case dealt with what we have here when you have this conflict between aggregation and a sentence — a congressionally created sentence-specific basis for reducing — a crime-specific basis for reducing a sentence. I agree with what Martin says, that sentences are imposed for individual convictions, and that's true. And so if I were reading 3632 by itself, a prisoner is serving a sentence for a conviction under any of the following provisions, I'd agree that the most natural reading is it's about the individual conviction. But the reason — but the fact that that is the most natural reading is why you need a separate provision that would allow the BOP to treat the sentence as an undifferentiated whole. And they have such a provision. So I guess just my — my question is, given that they have that, why doesn't that mean that I should depart from the most natural reading of 3632? Because I have to read it in conjunction with 3584. And you also have to read it in conjunction with the entirety of the First Step Act. I — I think the way I can best answer your question, Your Honor, I've explained in full in my brief this — this distinction between what's administrative and what's legislative. And what I'm arguing is two things. First, the — if aggregation comes first, then there's carefully, clearly worded provision in a very important statute is essentially unwritten or rewritten. And given this codicil that the BOP quoted in early language — Isn't it — isn't the overall thrust of the argument that — your argument that this is an ineligibility provision to receive time credits that otherwise Congress really wants? Correct. So we — so this can't be an administrative purpose. We need to look at the language itself of the ineligibility provision. And that says the prisoner is serving a sentence of conviction. Correct. And this is more like how we treat judges, the discretion of judges when there's a sentence sitting under separate counts. And it's not like — it's not an aggregation context. This is not — this is not unwriting the aggregation statute. The sentences are aggregated on the BOP's books. And it's — but here you have a very, very, very clear language. Is serving a sentence — I get that. And I was agreeing with you that there's that. I just wanted to know what to do with the aggregation statute. But let me answer this question. So the administration that the BOP does is it has to make a list of all of the prisoners who are eligible for the time credits. Correct. And then it has to calculate all of the time credits, right? Correct. You're saying basically when it makes the list of everybody who's eligible, it's not engaging in administration. But when it calculates the time credits, it is. And so the aggregation statute somehow kicks in in the middle of its administration of the statute. And that just seems like an odd result to me. And I'm asking how do I know that that's where I should draw the line about what's an administrative purpose and what's not? Here's how you know. And I'm going to take a moment. I would call this the most unsexy part of my argument. But I think it is borderline dispositive here. I lay that out in my brief. It's dispositive, but it's a pretty sexy part of the argument. Okay. So, I mean, I know I thought we'd all thought we'd be talking about Chevron stuff today, which is. I tried to walk the Court through in my brief. And I can, if you want to pull out, you have the addendum, page 10 and page 7. I want to distinguish this specific form of sentencing relief, the time credits of the First Step Act, from the two preexisting sentence reduction programs that are wholly administrative and that are the source of the case law reflexively cited throughout that. Well, when we're dealing with sentencing reduction issues, that's wholly administrative and it's in the hands of the BOP. If you look at the drug, those two programs are substance abuse treatment, addendum 10, page 7, page 8. Eligibility. The term eligible prisoner means a prisoner who is determined by the Bureau of Prisons to have a substance abuse problem. That's. Okay. Right. So that's what I was getting at earlier. And you seem to say. Same thing with the good time credits. That the BOP was in charge of deciding who's eligible and who's not eligible. In those other two programs. Right. In the other programs. I understand. So in that case where the BOP is in charge of determining who's eligible, then determining eligibility isn't an administrative purpose, and therefore the BOP can rely on the aggregation statute. Correct. Right? And you're just saying yours is different because the statute determines eligibility.  That's the uniqueness of this statute. That's your argument. That's my argument. I guess here's my question, which is, is there really a significant difference between a statute that says this is within the discretion of the BOP and a statute that sets out criteria that the BOP then has to apply? Like, in both cases, isn't the BOP making a list of people who are eligible? Oh, sure. In one case, it's a more difficult job because the statute tells them to develop additional criteria. In the other case, maybe it's an easier job because the statute is pretty straightforward. But in both cases, isn't the BOP administering the statute and part of that administration is making a list of who's eligible for the credits? Correct. So the B, so. So that's true that it doesn't seem like a very significant difference between the BOP applies statutory criteria. This is where I come back to Martin. Martin emphasizes twice that 3584C says that the BOP shall aggregate sentences for administrative purposes. What I'm saying, there, the, it crosses the line into a legislative act that they have no authority for when they are adding this codicil to the statute. That, their reading of this, even though they have, they have changed the way they word it in their public statements and in their responses to litigants, it means what they first said to my client, which is we treat this as meaning, is serving a sentence for or has a prior conviction for. I'm sorry. I'm getting a little confused. So are you saying that there is a difference between BOP's computation of credits and its determination of eligibility? Yes. So once they, what the BOP's administrative task here is, is to go through every prisoner's record and see what they're serving sentences for. Okay. I think, I think there was a sense that this is somehow some unwieldy problematic thing. There, the district court said, oh, oh my God, it doesn't say what to do in multi-conviction, in multi-count scenarios, as if that's some sort of throw-up-your-hands impediment. In reality, there's only a finite number of scenarios. You're serving a concurrent sentence for eligible and ineligible. Under that scenario, you're ineligible. You are serving. Eligibility for credits. For this program. But this is a very unique program. Would you just answer my question, please? Yes. Because I'm asking you to help me. Yes, okay. And so let me better listen to your question. Is the determination of eligibility of credits administrative? Is that something that we would describe or that the statute or anything else describes as an administrative matter? It's partially. The administrative aspect is examining the prisoner's records. The second part that's administrative is the big mandate, the blueprint that was laid out for the BOP. They then have to match prisoners to the appropriate recidivism reduction program, monitor their participation or level of success in that, calculate the credits. This is a lot like what they do. These are very closely linked exercises by the BOP, correct? But. They're following a clear. Is that correct? They're distinct tasks. But they're very closely linked. I mean, these are all BOP determinations, correct? Administrative determinations. Administrative determinations? Yes. Looking at the records. What is your argument? Your Honor, what is the defendant convicted of? Yes. I mean, your argument, it's like kind of a major questions argument maybe. You're saying Congress cared a lot about who was eligible for this program. Absolutely. And they decided who was eligible for this program. And so the BOP can't turn around and interpret the statute to change the eligibility criteria that Congress specified in the statute. Correct. I don't think anybody disagrees with that. If it was really clear that Congress wanted specific eligibility criteria, then the BOP certainly can't alter that through a kind of administrative interpretation. But isn't the question whether when Congress wrote is currently serving a sentence for a specified offense, it meant that to be independent of what the BOP does on the back end or it was in light of the BOP's ability to aggregate? Well, of course. I mean, your Honor, we presume that Congress legislates with familiarity the entire U.S. Code that predates it, right? It also legislates with familiarity that there exist defendants convicted of serving sentences for more than one offense. And it carefully — that's the mandate, that you treat them separately. And again, I come back to — Yeah. So I guess your argument is sort of if the statute says the prisoner is serving a sentence for a conviction under any of the following provisions — Is serving a sentence for — Is serving — you say is. They say a sentence for a conviction. They list particular convictions and so on. You're saying that's so clear that it can't be that a casual provision that allows the BOP to aggregate on the back end when it's administering it can overcome that clarity of that — Correct. — of that provision. Correct. And — So it would distort what Congress — Correct. — what Congress must do. Exactly. Exactly, Judge Monashi. And to bolster that, they — How do you — I mean, some other circuits have already decided this issue. We haven't addressed it yet. Well — But those other circuits don't appear to have accepted your interpretation. How do you — where did they go wrong? Is it not looking at the clarity of the language? There are two principal deficiencies in the body of case law in that long footnote of the governance. Okay. The first is they are relying on this general proposition that all sentencing reduction credit programs are administrative in the hands of the BOP. And those two arose out of the two other programs. This is my unsexy argument. The two other programs — I think it's the sexiest of the arguments. Well, no. The two other programs — The two other programs were the statute by its terms puts in the BOP's hands determinations of eligibility. BOP determines if you have a drug problem. BOP determines if you're behaving appropriately for the good time credits. Right? And then they do all the math. With the good — with the First Step Act, they delineated it very, very differently. So to answer your question, Judge Livingston, that distinction was not brought up in any of the other cases. And again, I'm not drawing attention to myself, but I note that those were all pro se litigants. Most of the decisions are precedential without — without their summary, without precedential value, and without oral argument. So what you're suggesting is that in some cases, Congress is delegating to the BOP administrative authority over eligibility questions. In those first two, yes. If Congress doesn't delegate to the BOP that administrative authority and specifies itself the eligibility criteria, then you should not understand the application of the eligibility criteria to be administrative such that the BOP can depart from what — the plain text of what Congress has written. That's absolutely my argument, Your Honor. And particularly in this statute, as I've detailed, it's important that this statute was a response to congressional dissatisfaction with the BOP on a host of fronts. It's important that while it details a very — it gives the BOP a very specific blueprint about how to carry out the recidivism reduction program, it puts the Attorney General in as watchdog. Okay? And I think it's telling — I didn't want to bring up Chevron. I don't think the Court needs to wait for it. But I think it's very telling that Chevron deference is what these courts have used to justify the BOP — I think most parties would agree it wouldn't be Chevron because the BOP hasn't adopted a regulation or lawmaking procedure. Of course not. Absolutely. It's not even a colorable claim. But this is — let me get back to your question. What's defective in the body of case law? So I think you have a very — you have very sound, respectable grounds for departing from them. I just don't think of it as being defective.   It came before a long history of fraudulent crackdowns and fraudulent litigation. They did not consider the distinction between the other two sentencing reduction programs. They did not really consider what's going on, legislative, that this is a legislative, a pseudo-legislative act to rewrite a statute. And so – and thirdly – Of course. I mean, the Supreme Court has a right. I mean, I understand maybe they'll – Maybe – I don't know if they're convening now. The Supreme Court has said that agencies do engage in what you're calling pseudo-legislative acts when they administer statutes. That's why we do give them deference on questions of litigation. The Supreme Court, Your Honor, has said if they needed Chevron to defend what they're doing, that's the red flag to this Court, back to the administrative aggregation. That's the red flag to this Court. If you need Chevron to defend what they're doing to this statute, that tells you they know it's legislative. It is an amending of a statute. Or it might just mean that there's two available interpretations and they're saying you should defer to the agency that's administering it if you have two available interpretations. As this Court said in Martin, it bears repeating. Sentences are imposed for specific offenses. Can I ask this question? I mean, you acknowledge that Congress legislates against a legal backdrop, right? So part of the question here is what – how Congress would have understood the aggregation statute, the scope of it, to apply when it enacted the subsequent statute about the eligibility for credits. If what the government says is right, that the BOP doesn't really get information about all of the individual convictions and when the particular sentences expire and so on, wouldn't that suggest that Congress understood that the BOP would not be able to administer a statute that required them to investigate all of that information and therefore we should understand the aggregation statute as accepting the preexisting practice? Judge Monacci, the answer to your question would be yes if the premise were accurate. But the premise is not correct. The BOP is the depository of the paperwork that shows what a defendant was convicted of, what his – which offenses, what are his release dates. It's a simple – I shouldn't say simple. It's paperwork. It's classically administrative. This is prison management. They have that information. And so the – I mean, the other piece of this that I think is why the district court threw up its hands is the passage that says, well, it doesn't say what you do with multi-count defendants. That is not an aberration. I don't have statistics I was happy enough with to cite in my brief. You do a little searching, different sources say about 50 percent, maybe 60 percent of defendants are charged in one-count indictments, right? That leaves a lot of defendants serving more than one sentence, right? You have a finite number of scenarios. If you are serving concurrently, eligible and ineligible, obviously you're ineligible, right? The facts of mine are probably the most unusual in that the ineligible offense got the shorter sentence, right? So there's no dispute here. My client finished serving his time on his ineligible offense in the fall of 2018, before the First Act was even – the First Step Act was even enacted, okay? And that is continuing to carry in his record. I mean, to answer your – back to your premise, the BOP knows what his two crimes are. There's no mystery. They are just electing. Does it know when one sentence is finished and the sentence on the other conviction has started? Yes. I know in the record we have the – Does the BOP ever in any other context have to monitor that sort of thing? Well, they monitor all the time in the other programs when they're – for example, in the good time credits. They're monitoring your behavior, a prisoner's behavior, and then they're deciding whether you get some or all of the 54 days that you're entitled to per year, and then they adjust that. There's a page in the appendix. It's the computation. They monitor your behavior in prison, you're saying? Yes. But that's different from monitoring the time that you're serving and which conviction is possible for you being in prison at that time. On any given day, you can get – I know it's in the record. On any given day, you can get a sheet from the BOP that details time served, estimated release date. We have one in the record for my client. Maybe I'll have it for you. I think you're saying it's time to look that up. And so the final thing I wanted to add about this is that the nature of this credit also alleviates the sort of practical objection. One paragraph away from the provision at issue here, the definition of eligibility, if you back up to paragraph C, you will find – I must call this – it's almost – I want to call this statute self-executing. This credit shall – first of all, it's mandatory – shall be applied when a prisoner reaches a late stage of his incarceration, when the prisoner reaches pre-release custody or supervised release. And this is in subparagraph C, one paragraph ahead of the provision at issue here. It would be addendum page 2 if you have the addendum in front of you. So it's a kind of an accrual, which is stuff that, again, the BOP does this when it's calculating. This is the administrative task they'll have to do, right? So what I think is – what I think is the hardest of the scenarios to think about with the language of this statute, and that's also, Judge Livingston, to further answer your question, what has come up in most of the other circuits, the hard case. The hard case is that the defendant is serving a sentence for an ineligible offense and then has a gun count, has that 924C gun count, which is ineligible. Right? And you reserved one minute? I did. One minute of your time. So we'll – okay. Thank you, Your Honor. Thank you, Your Honor. Good morning, and may it please the Court. John Larson for the Respondent. As both parties agree and as the Court discussed, this Court has said time and time again that Congress is presumed to be aware of the legal backdrop against which it passes legislation. That – excuse me – that principle is of particular importance in a case like this where the preexisting statute, that is, the aggregation statute, predates the FSA by nearly 35 years. And in that period of time, the Bureau of Prisons continually, repeatedly aggregated sentences of Federal prisoners for administrative purposes when calculating their sentences and applying time credits against those sentences. I do agree that if we didn't have that backdrop, the aggregation statute, just reading 3632D4, we would say the most natural reading is serving – currently serving a sentence for an individual conviction. That's probably the case, Your Honor. We'd be left in a situation where perhaps the Bureau would have needed to promulgate a regulation, something along those lines. But if it – But it would have to do that. Correct. You agree, basically, with the other side, that the best reading of 3632D4 is – it's an individual sentence for an individual conviction. I think it's hard for me to answer that question, yes or no, because it's hard for me to – Well, they just did, but okay. Imagine a situation where the – where the sentences are not aggregated. Because just in the context of Bureau of Prisons' sentence calculation, they're always aggregated. So it would be – I think without the aggregation statute, obviously the petitioner would argue that – No, I'm saying like if you knew nothing about – there was no legal background or whatever. You're just reading the text by itself. It says if the prisoner is serving a sentence for a conviction and it enumerates specific convictions, you'd read that to mean an individual sentence for an individual conviction. That's probably the most natural reading, yes. Right. And so it's the fact that we have the backdrop of the aggregation statute that changes the meaning of serving a sentence. That's right, Your Honor. And what about the argument here where, you know, opposing counsel is saying, well, we have other contexts where Congress basically delegates to the BOP this determination about eligibility. And so that's the way Congress is saying, well, you can invoke the aggregation statute because we're giving you administrative responsibility for this determination. But when Congress says in the statute, this is how we want the eligibility to be set up, it hasn't delegated that. And so maybe that's not an administrative determination. That's a legislative determination for Congress. Why shouldn't we reach that conclusion? So I think there are a few problems with that, Your Honor. The first being it's almost entirely divorced of the language of the aggregation statute itself. It is a distinction that counsel has pointed to. Respectfully, Your Honor, I think it's a distinction without a difference. And there's a few reasons you can tell that. I think the most prominent is actually this Court's decision in Martin. If this was not a time credit that came up in opposing counsel's argument, but if you look at the prior custody credit statute, that's Section 3585, that's the quintessentially administrative purpose that this Court emphasized in the Martin case. If you look at 3585, that is Congress dictating to the Bureau of Prisons that prisoners shall receive prior custody credit under certain circumstances. So in that situation, Congress has delineated the boundaries of the prior custody credit, has told BOP how to apply it, BOP calculates it in accordance with congressional intent, applies it to an individual sentence. It's 3585B? Correct, Your Honor. Okay. So just as an — by way of example, that's not a situation, for example, where Congress passed a statute that said, Bureau of Prisons, provide prior custody credit in the manner that you deem appropriate. And that distinction is important because this Court has already said, appropriately, that application of that credit, time credits, I think, more generally, but at least that credit as it's contained in Martin. And that's an example of a situation where the — So you're saying even when Congress provides the criteria, if the BOP has to just apply it, even if it's straightforward from what Congress said, the BOP is still engaging in administration, and so can invoke the aggregation statute? That's exactly right. Indeed, they're obligated. Of course, if, you know, 3632D4 said something like, you know, whether — the determination about whether a prisoner is serving a sentence for a conviction shall not be considered an administrative purpose or something, then you wouldn't be able to invoke the aggregation statute. Absolutely true. So Congress could certainly have written the statute differently, could have highlighted the — whatever it wanted to about the aggregation statute to make certain individuals differently eligible. As I think Your Honor pointed out in opposing counsel's argument, there's no question that Congress has established the ineligibility of certain inmates, and the Bureau of Prisons is applying that statute. But isn't it very odd that Congress writes the statute in a way that you even agreed the most natural reading is that it's about an individual conviction, but then that whole framework is changed dramatically based on the application of some other statute from 35 years earlier? If that's really the result Congress wanted, wouldn't it have written 3632D4 differently? I don't think so, Your Honor. And I think the reason for that is in the time credit context, I can't think of a single situation — and I don't think opposing counsel has raised one — where in the time credit context, it is not an aggregable sentence. Sentences are not subject to the aggregation provision when BOP is computing time credits. I don't know of one. I understand that there has been a distinction drawn between some of the other time credits and some other kind of time credits on our side. But I can't think of a situation where time credits are not construed in this way. And so I don't think it's at all unusual for Congress to have passed the FSA, passed another new, entirely new set of time credits, but asked and charged BOP with calculating and applying them in the manner in which all other time credits are applied. And that's the case for prior custody credit. That's the case for good time. That's the case for RDAP credits. And I acknowledge that in certain of those other things, there are also tasks that the Bureau of Prisons is responsible for determining eligibility on for. But nevertheless, even after that eligibility determination is made, the application and calculation portion is administrative. Counsel for the Petitioner cited in his brief, I think in the reply, a case out of the Ninth Circuit, which is Moreno v. Ives. That case is actually very interesting on this topic because what the Bureau of Prisons does, that's an RDAP case, a drug programming case. And in that case, the Bureau of Prisons established certain eligibility criteria for individuals who may or may not be able to receive RDAP by regulation. So some of those prisoners or some of those inmates are not allowed to receive RDAP if they are serving a conviction for a given offense. Some individuals are not eligible for RDAP if they've ever served, if they've ever been convicted of a crime in circuit terms of imprisonment. And in Moreno, the Bureau of Prisons essentially did the same thing here, construed an inmate's eligibility for RDAP in accordance with the aggregation provision. And the Ninth Circuit adopted the Bureau of Prisons' interpretation. It's not only unpublished, but there's a dissent that says that doesn't make any sense because if you're treating the sentence as one undifferentiated sentence for each conviction, it's like an absurd result and it suggests that you're getting above the maximum sentence for every count of conviction. Well, I understand that that was the dissent's position, but my point with respect to Moreno is that the Court's conclusion in that case is that once Bureau of Prisons has promulgated this regulation, promulgated this eligibility regulation in accordance with congressional intent, they've essentially done what Congress has done with the FSA. They have enumerated certain offenses that can kick you out, that can maybe kick you out, or otherwise. And so in that case, they are applying the statute, their own regulation, in a quite similar way to the way that they're applying Congress's section in this case. Why is it that the two statutes use two different terms? One in 3632d4 refers to serving a sentence per conviction, and 3584 refers to a term of imprisonment. So I think, Your Honor, and I believe this has been something recognized both by the Supreme Court and this Court. Occasionally, Congress uses those terms, terms of imprisonment or sentences interchangeably. A conviction obviously could carry with it something that did not carry a term of imprisonment with it. It's hard for me to envision a situation where that would be relevant to the Bureau of Prisons given their charge. I guess it's possible that if a conviction were subsequent to why the inmate was there, a subsequent conviction that carried with it probation or something like that. I mean, what possible difference between a sentence and a term of imprisonment is that a sentence is what a court imposes. It imposes a sentence. But a term of imprisonment is how long you're serving in jail, and that's what the Bureau of Prisons might have to think about when it's deciding good time credits. I think that's right, Your Honor. And I guess right, then, could it be that 3632 is invoking the sentence imposed by the court, and that's a different thing from the term of imprisonment that the Bureau of Prisons has to take account of when it determines how long you've served? I think that could well be right, Your Honor. The point that I was going to make. Well, that's right. Isn't that a basis for opposing counsel's argument that there's a difference, that the 3632 eligibility determination is a legislative determination and the 3584 thing is administrative, and administrative is only when you're counting the days, not when you're deciding eligibility? And respectfully, I disagree, Your Honor. I think the reason I disagree, in part, is because if you look at the terminology of Section 3584, as the Court just read it, there is a – it is multiple sentences of imprisonment. Even within 3584, the statute uses both. Right. The title – the operative language says terms of imprisonment, but the title of the provision says sentences. Right. It does suggest that it's – although, you know, the title isn't – Congress doesn't always write the title, so it's not clear that that's dispositive. And at least in this case, Your Honor, I actually don't think the parties have any disagreement about that. I think from the – from the jump in this appeal, the parties have agreed that the Bureau of Prisons regulation, which, as I recall, adopts term of – sentence of imprisonment, uses the same language. And so I think 3584c uses both, and the – the Section 3632d4's discussion of a sentence for a conviction doesn't actually mean anything different for purposes of 3584. I mean, it may use both, but the operative language, the language that's really relevant here is terms of imprisonment. That's right, Your Honor. Though, again, I'd emphasize that at least in the language as it appears in the statute, including the title, it refers to both. And so I think that the Bureau of Prisons properly treats them – treats them as the same. The – the – one other point I wanted to make – oh, I see. I'm over time, Your Honor, then. I'll just rest on my brief. Thank you. Why don't you make your point? The one – the one point I wanted to make with respect to opposing counsel's discussion of – of drawing a distinction between whether – in certain circumstances, the more difficult circumstance, as he put it. The other courts that have addressed it, which is – every other court has come out in favor of the Bureau's interpretation. Some subset of those cases involved consecutive sentences. The only point I would draw is, again, turning back to the language of the aggregation statute, the aggregation statute draws no distinction between whether the sentences are consecutive or concurrent. They should be treated the same way. They should be treated the same way. Can I ask, would it really be so difficult for the Bureau of Prisons to just have in a database like the convictions of each prisoner and just a date on which the sentences for each conviction is going to run? So I think it's – it's certainly something that they have to keep track of anyway, as Your Honor pointed out. Right. If they have it anyway. But in some – in certain – in certain circumstances, that's something that they have to know. For example, if a conviction is vacated on account subsequent and they have served the balance of an offense on another, there are – there are reasons to have done it that way. But nevertheless – So if they have other reasons for distinguishing between sentences for individual convictions, how could it be, you know, unacceptably impossible for them to administer good time credits based on those same criteria? I think – without necessarily saying that it would be impossible, because I don't necessarily want to go that far. It's also, I think, congressional – Congress certainly has the ability to legislate to the Bureau of Prisons. That's something that can – that can play a factor. Okay. If Congress didn't want them to do that, it wouldn't have to require it. But I'm saying the question here is whether Congress did. And part of that analysis is whether – is what the practice is and what's feasible. And so you're saying if it is feasible, you just don't think that Congress required it. That's right. And there is one, I think, absolutely key point of that as it applies to the First Step Act specifically, which is – and this relates to sort of these issues where there are consecutive sentences. The First Step Act credits only apply under 3624G. The only manner in which they apply is to either send an inmate to early supervised release or to pre-release custody. That is to – Or to what? Or to pre-release custody. That is, an ROC or to home confinement. If you have a situation, like many of the situations that have been faced in cases across the country, where you have consecutive sentences, and the first sentence is the eligible sentence, and an inmate is allowed to obtain credits during that period of time in the way that that opposing counsel thinks the statute should be interpreted, and you reach the end to apply the credits, that individual still has an ineligible sentence to serve. They cannot be sent to early supervised release. They cannot be sent to ROC when there's still a term of imprisonment. And to the extent that opposing counsel would raise, well, that's the difficult situation, that's the consecutive sentence. Oh, I guess sometimes you'd have a case where an ineligible sentence is consecutive to an eligible sentence. And so if you didn't aggregate, you'd be accumulating good time credits, then you'd stop, and then somehow the program would kick in at the end. And so I think like it's – that would be a weird result. I think that's exactly right, Your Honor. Thank you, Your Honor.  I'll be brief, Your Honor. First, to be crystal clear about how these credits work, addendum page 2, 3632D4C, application of the time credits toward prerelease custody. They do not advance the placement of a prisoner in prerelease custody, okay? They only apply when the prisoner gets there, okay? So in the hard 924C case, they've accrued something that they may or may not live to see the benefit of, all right? Just so we understand how that works. So it doesn't have that problem. Page 820, Judge Minoski, I just wanted to show you was an example of the kind of thing that the BOP can run on any given day for a prisoner, all the data they need, including their present, what's left on their sentence, how much time they have, when they're due for early release, et cetera, et cetera. Moreno v. Ives dealt with one of the two other kinds of time credits. It was the drug rehab, which, as I discussed, is where the Congress gave the BOP express authority to determine eligibility. What I want to leave the Court with is that. Mr. Quinn, before you leave us, let me ask you a question. The government indicated that there's no dispute, that there's not really a difference between a sentence of eviction and the term of imprisonment. Is that accurate? You don't dispute that? I'm going to have to ask you to repeat the question, Judge Loewy. Do you mean the title of 3584? It's not just the title but the language. So 3632 uses the phrase serving a sentence of conviction. Correct. 3584 uses the phrase, and I'm reading these together, uses the phrase term of imprisonment. And your friend on the other side said there's not been a dispute, that there's no difference for our purposes between those two phrases. Is that correct? That there's not been a dispute about that, and there is no dispute about that. I haven't penned the dispute. I would say the controlling language is sentence. That's the language the Court is using. The question is, do you have an argument that because the language in the operative and the language in the aggregation statute is term of imprisonment, that therefore that's a reason why the aggregation statute wouldn't apply? No. Not to the extent that that is the thing that the BOP is directed to aggregate. They're directed to aggregate sentences into a term of imprisonment. Okay. Is that correct? So they're slightly different. They're slightly different. Thank you very much. Thank you.